IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GLORIA DEAN CLARK, | § § | |
| Plaintiff, | § § | |
| | § | CIVIL ACTION NO. 4:21-CV-00883-ALM- |
| v. | § § | CAN |
| COMMISSIONER, SSA, | § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

*Pro se* plaintiff Gloria Dean Clark ("Plaintiff") brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

**RELEVANT BACKGROUND**

On April 14, 2017, Plaintiff protectively filed her application for disability income benefits ("DIB") under Title II of the Social Security Act [TR 391-392]. Plaintiff alleged disability due to triangular fibrocartilage complex ("TFCC") in the right wrist, arthritis, abnormal ulnar nerve damage, and carpal tunnel syndrome ("CTS") [TR 427]. Plaintiff alleged an onset of disability date of January 4, 2017 [TR 247]. Plaintiff's application was initially denied on August 14, 2017, and again upon reconsideration on January 25, 2018 [TR 255, 266]. Subsequently, Plaintiff underwent an administrative hearing and thereafter received two ALJ Decisions, the final decision culminating in the instant appeal, as outlined *infra*.

*May 2019 ALJ Decision*

After a hearing on Plaintiff's application on January 29, 2019 ("Hearing") [TR 226-245], ALJ Elizabeth Dunlap issued a partially favorable decision on May 8, 2019 [TR 268-280]. ALJ Dunlap found that Plaintiff was disabled from her alleged onset date, January 4, 2017 through September 1, 2018, but not thereafter [TR 280]. On April 6, 2020, the Appeals Council granted review and vacated the hearing decision [TR 283-286]. Importantly, the Appeals Council found,

> The finding of medical improvement is not supported by substantial evidence. The Administrative Law Judge found that beginning September 2, 2018, the claimant concedes that she regained the ability to perform the full range of sedentary work (Finding 13). The claimant did sign a letter indicating she requested a closed period of disability ending on September 1, 2019, but she subsequently submitted a letter indicating she wished to revoke her prior request (Exhibits 10D and 10E). Furthermore, there is no indication the claimant agreed she could perform the full range of sedentary work. Moreover, a finding of medical improvement requires a showing that there has been changes (improvements) in the symptoms, signs, or laboratory findings associated with the claimant's impairments (20 CFR 404.1594(c)(1)). The decision does not contain any discussion of changes in symptoms, signs, or laboratory findings. Accordingly, the finding the claimant has medical improvement is not supported by substantial evidence.

[TR 284].

*February 2021 ALJ Decision*

Upon remand, Plaintiff waived additional hearing [TR 384]. On February 22, 2021, ALJ Paul Wood issued a second partially favorable decision; the decision granted a "closed period" of disability and DIB from Plaintiff's alleged onset date of January 4, 2017, through July 8, 2019, but not thereafter due to medical improvement ("February 2021 ALJ Decision") [TR 31-56]. In connection therewith, the ALJ made the following sequential evaluation(s) [TR 31-56].

*Disability Found– January 4, 2017, through July 8, 2019*

The ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2023, and that Plaintiff had not engaged in substantial gainful activity since her

alleged onset date, January 4, 2017 [TR 38].[1]  The ALJ found Plaintiff had the following severe impairments since January 4, 2017: "status post triangular fibrocartilage complex (TFCC) tear with cubital tunnel syndrome and ulnar impaction syndrome, bilateral carpal tunnel syndrome ("CTS"), cervical degenerative changes, and history of right knee surgery" [TR 38].  At step three, the ALJ found that from January 4, 2017 through July 8, 2019, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925 and 416.926) [TR 40].  At step four, the ALJ found:

> [F]rom January 4, 2017 through July 8, 2019, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl. She could never drive or have exposure to hazards, such as unprotected heights and dangerous, moving machinery. The claimant was limited to less than constant use of the upper extremities but could frequently use the upper extremities to reach. She could frequently use the non-dominant upper extremity to push and pull hand controls, handle, finger, and feel. She could occasionally use the dominant upper extremity to push and pull hand controls, handle, finger, and feel.

[TR 40].  Continuing the step four analysis, the ALJ found Plaintiff was not capable of performing past relevant work from January 4, 2017, through July 8, 2019 [TR 46].  At step five, the ALJ found that from January 4, 2017, through July 8, 2019, there were no jobs that existed in significant

---

[1] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. § 416.920(a).  First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled.  *Id*. § 416.920(a)(4)(i).  Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience.  *Id*. § 416.920(a)(4)(ii).  Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Id*. § 416.920(a)(4)(iii).  Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing her past work based on his residual functional capacity.  *Id*. § 416.920(a)(4)(iv).  Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy.  *Id*. § 416.920(a)(4)(v).  Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates.  *Id*.

numbers in the national economy that the claimant could have performed [TR 46-47]. Thus, Plaintiff was under a disability from January 4, 2017 through July 8, 2019.

### *Medical Improvement Found - July 9, 2019 through February 22, 2021*

ALJ Wood then applied the eight-step sequential process[2] and found that Plaintiff's disability did not continue after July 8, 2019 through the date of the February 2021 ALJ Decision due to medical improvement. Relevant here, and discussed more fully in the Court's analysis, "[a] claimant can sometimes be found to have had a disability at one point in time but no longer to be disabled due to medical improvement," which is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [claimant was] disabled or continued to be disabled." *Jones v. Astrue*, 3:10-CV-2342-D, 2011 WL 2633793, at *3 (N.D. Tex. July 5, 2011) (citing 42 U.S.C. § 423(f)(1) (permitting cessation of benefits upon proof of medical improvement and ability to engage in substantial gainful activity)); 20 C.F.R. § 404.1594(b)(1) (noting that the changes must be in the symptoms, signs, and/or laboratory findings associated with the impairment). The ALJ found Plaintiff had not developed any new impairments since July 9, 2019; and, that the Plaintiff's severe

---

[2] Termination proceedings are governed by the following eight-step sequential process:
(1) Is the claimant engaged in substantial gainful activity? (If so, the disability has ended.)
(2) If not, does the claimant have an impairment [or] combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? (If so, the disability is continuing.)
(3) If not, has there been medical improvement?
(4) If there has been medical improvement, is it related to the claimant's ability to do work?
(5) If there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, is one of the exceptions to medical improvement applicable? (If not, the disability is continuing.)
(6) If there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, is the combination of impairments severe? (If not, the disability has ended.)
(7) If so, is the claimant able to engage in past relevant work? (If so, the disability has ended.)
(8) If not, is the claimant able to perform other substantial gainful activity?
20 C.F.R. § 404.1594. Although the instant case does not involve a termination of benefits already awarded, in deciding this closed period case the Court "will apply the burden of proof and eight-step process used in a termination case." *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002) (medical improvement standard, which is generally applicable to termination of disability of benefits cases, applies in closed period cases where disability ceased on a certain date).

impairments were the same as present during the term of disability. ALJ Wood found that beginning July 9, 2019, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)). ALJ Wood next found that "[m]edical improvement occurred as of July 9, 2019, the date the claimant's disability ended" [TR 48]. ALJ Wood stated that the medical improvement "is related to the ability to work because there has been an increase in the claimant's residual functional capacity" [TR 49]. Finding no exceptions applicable, and that Plaintiff continues to have the same severe impairments [TR 49], the ALJ made the following residual functional capacity ("RFC") finding:

> [B]eginning July 9, 2019, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. She can never drive or have exposure to hazards, such as unprotected heights and dangerous, moving machinery. The claimant is limited to less than constant use of the upper extremities, but she can frequently use the upper extremities to reach, push and pull hand controls, handle, finger, and feel.

[TR 49]. Based on this RFC, beginning July 9, 2019, Plaintiff was able to perform past relevant work as a loan clerk [TR 54]; thus, Plaintiff's disability ended on July 9, 2019, and the claimant has not become disabled again since that date [TR 56].

On August 1, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 8]. The Appeals Council denied review on June 28, 2021 [TR 2-5]. On August 6, 2021, Plaintiff filed the instant suit in the Northern District of Texas [Dkt. 1]. Subsequently, this case was transferred to the Eastern District of Texas, Sherman Division [Dkts. 12; 13; 14]. On February 1, 2022, the Administrative Record was received from the Social Security Administration [Dkt. 21]. Plaintiff filed her Brief on February 10, 2022 [Dkt. 25]. The Commissioner filed its Brief on April 7, 2022 [Dkt. 26]. On April 13, 2022, Plaintiff filed her Reply [Dkt. 27].

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F. 2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

## ANALYSIS

Plaintiff filed this federal action *pro se*, which imposes an additional layer of consideration for the court. As this and other courts have recognized, a lay plaintiff is unfamiliar with legal terms of art such as "substantial evidence" and lacks expertise in the rules governing Social Security regulations. *See Lockridge v. Colvin*, No. 3:12-CV-4135-BN, 2014 WL 1255745, at *3 (N.D. Tex. Mar. 27, 2014); *Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006). Moreover, no statute, regulation, or court decision prescribes a precise analytical model for *pro se* actions seeking judicial review of adverse administrative decisions by the Commissioner. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 752 (E.D. Tex. 2005). Often, *pro se* litigants in Section 405(g) appeals invite the court to re-weigh the evidence and come to a different conclusion than did the Commissioner, which the court may not do. *See Washington*, 413 F. Supp. 2d at 791. Although courts must construe *pro se* pleadings and arguments liberally considering a party's lay

status, they must also maintain their role as neutral and unbiased arbiters. *See Lockridge*, 2014 WL 1255745 at *3. Courts are not bound to "scour the record for every conceivable error," but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized. *See id*. (citing *Elam*, 386 F. Supp. 2d at 753).

With these principles in mind, it appears that Plaintiff asserts two issues on appeal: (1) the Commissioner's finding of medical improvement is not based on substantial evidence and (2) the additional evidence submitted by Plaintiff requires remand.

***Substantial Evidence Supports the ALJ's Finding of Medical Improvement***

The ALJ found Plaintiff disabled for a closed period[3] of January 4, 2017, through July 8, 209, but not disabled thereafter. Plaintiff's main contention is that her disability did not end on July 8, 2019. Plaintiff contends that although medical imaging showed no abnormalities of her right wrist and elbow starting in July 2019, she still suffers from severe pain and limitations in her right hand [Dkt. 25 at 7].

"In those instances in which an ALJ grants disability benefits for a closed period of time, two decisions occur. The ALJ first finds the applicant disabled and grants benefits. The ALJ then engages in the termination decision-making process to determine that the disability ended at some point before the hearing." *Roderick D.T. v. Berryhill*, No. 3:18-cv-274, 2019 WL 1128960, at *3 (N.D. Tex. Mar. 12, 2019) (internal citations omitted) (citing *Joseph v. Astrue,* 231 F. App'x 327, 329 (5th Cir. 2007)); *see also Garza,* 2013 WL 796727, at *4. To determine when the disability,

---

[3] "A 'closed period of disability' occurs when an applicant for disability benefits was disabled for a finite period of time that started and stopped prior to the date of the Commissioner's decision.'" *Hart Silas v. Comm'r*, No. 6:18-cv-00121, 2019 WL 2608889, at *5 (W.D. La. Apr. 5, 2019), *report and recommendation adopted*, No. 6:18-cv-00121, 2019 WL 2607500 (W.D. La. June 25, 2019); *see also Garza v. Astrue*, 3:11-CV-3545-G-BN, 2013 WL 796727, at *4 (N.D. Tex. Feb. 7, 2013), *report and recommendation adopted*, 3:11-CV-3545-G BN, 2013 WL 818723 (N.D. Tex. Mar. 5, 2013) (quoting *Waters*, 276 F.3d at 719).

and therefore the closed period, ends, the ALJ must apply the medical improvement standard. *Roderick D.T.,* 2019 WL 1128960, at *3 (citing *Teague v. Astrue,* 342 F. App'x 962, 963 (5th Cir. 2009). "An ALJ may appropriately discontinue disability benefits when there is substantial evidence that '(1) there had been a medical improvement related to the ability to work, and (2) the individual is now able to engage in substantial gainful activity.'" *Id*. (citing *Teague,* 342 F. App'x at 963–64). "A 'medical improvement' is any decrease in the medical severity of an impairment that was present at the time of the most recent favorable disability determination." *Id*. (citing C.F.R. § 416.994(b)(1) (i); *Gardner v. Astrue,* No. 4:10–cv-226, 2011 WL 2292179, at *3 (N.D. Tex. Apr. 19, 2011)). "A medical improvement is related to a claimant's ability to do work when there has been a decrease in the claimant's impairment and an increase in the claimant's functional capacity to do basic work activities." *Id*. (citing *Teague,* 342 F. App'x at 964 (citing 20 C.F.R. § 404.1594(b)(3))). "A finding that there has been a decrease in medical severity must be based on changes in the symptoms, signs, or laboratory findings associated with the impairment." *Id*. (citing C.F.R. § 416.994(b)(1)(I); *Gardner,* 2011 WL 2292179, at *3).

In making a finding on medical improvement, ALJ Wood explained:

As detailed above, following her 2016 workplace injury, the claimant displayed significant signs of complications with right upper extremity function post-TFCC tear, including reduced wrist and grip strength and abnormal right upper extremity sensation (see 4F; 5F/2; 9F/56; 11F/6 -7). Yet, the claimant's condition gradually improved with conservative treatment and time. Clinical evidence has confirmed medical improvement with the claimant displaying normal strength, sensation, and reflexes (e.g., 27F/4, 7, 17; 30F/5-6, 9-10). In addition, imaging of the right wrist and elbow from July 8, 2019 were negative (29F/13, 15). Accordingly, the undersigned has found that medical improvement has occurred.

….

As to the claimant's reported deficits, the claimant has continued to have the same severe impairments. An MRI of the cervical spine from April of 2020 described her degenerative disc disease as "mildly" worse than seen on her earlier MRI in July of 2019 albeit with "severely" narrowed spinal canal at C3-4 (29F/6-7). EMG/NCV

testing from January of 2020 was consistent with right-sided radiculopathies (23F/4). She has used pain medications such as Flexeril and Norco during this period as well (32F/3).

Still, imaging of the right wrist and elbow from July of 2019 were negative, and there is no MRI from the relevant period to suggest significant complications post-TFCC tear (29F/13, 15). The record does not show that the claimant required any regular injections or sought out consistent chiropractor care for this period.

Additionally, while the claimant previously testified to lying down during the day, she did not detail any regular problems with sitting to medical providers. Though the claimant has been told to avoid driving and operating machinery when she takes her pain medication (see 27F/7), she did not report sleeping during the daytime with any consistency as a result of her use of medication, which does not lend support to her testimony (30F/5). In fact, she denied having significant medication side effects (27F/17). Examinations also do not detail significant clinical signs of side effects from her medication, with the claimant observed to be alert and oriented with intact cranial nerves, unimpaired memory, and the ability to follow commands appropriately, which has been considered in finding that the claimant is capable of work within the above residual functional capacity (without any mental restrictions or need for extra breaks) despite her use of medication (23F/8; 27F/7, 24; 30F/5-6).

The longitudinal medical evidence of record supports the conclusion that the claimant has been capable of work within the above residual functional capacity (without a need for greater manipulative limitations) despite her conservative treatment. When seen on July 8, 2019, the claimant had restricted cervical spine motion to an unspecified degree. Still, she was in on acute distress and able to sit comfortably on the exam table. She displayed a normal gait and had no edema. Despite reporting right elbow pain at this time, her right elbow was normal with no swelling or restricted motion. The claimant also displayed intact cranial nerves, normal reflexes, and normal sensation (27F/4). At a later examination that month, the claimant had restricted right upper extremity and cervical spine motion to an unspecified degree with tenderness of the right upper extremity and neck. She maintained normal motor strength and muscle tone. She had no edema and was able to ambulate normally (27F/7).

At examinations in August and November of 2019, the claimant had "mild" tenderness of the spine with restricted cervical spine motion. Yet, she maintained normal motion in all extremities. She was in no distress and had normal bilateral upper extremity power, sensation, and reflexes. There was also no edema (27F/10, 17). At December of 2019 and March of 2020 neurological examinations, the claimant was observed to have normal strength, including of the wrists/hands and neck. She displayed no impairment in coordination, normal balance, and normal gait and stance. She also had no impairment in sensation (30F/9 -10, 13-15). At the March of 2020 examination, the claimant's neurologist noted that there was no

> obvious right hand muscle wasting to suggest ulnar neuropathy and that her EMG testing did not suggest any cubital tunnel syndrome (30F/11).
>
> At a separate March of 2020 examination, the claimant had restricted right upper extremity and cervical spine motion to an unspecified degree with tenderness of the right upper extremity and neck. However, she maintained normal motor strength and muscle tone. She had no edema and was able to ambulate normally (27F/24). When seen in April of 2020, the claimant was in no acute distress. She had a full neck motion and musculoskeletal motion. She also had no edema (23F/7-8). In July of 2020, the claimant had normal strength (including of the hands), muscle tone, gait, stance, and cranial nerves. From a neurosurgical perspective, claimant was being observed but had not developed any myelopathic features. She had unremarkable coordination as well (30F/5-6). Additionally, when seen in December of 2020, the claimant had normal strength and muscle tone with no focal deficits. She had normal gait and station. She had no edema and was in no acute distress. Her spine was also non-tender (34F/7).
>
> Hence, in considering the record as a whole, including the course of conservative treatment and the medical records showing that the claimant maintained normal strength, sensation, reflexes, gait, stance, cranial nerves, and balance with no focal deficits or deficits in coordination, the undersigned has found that the claimant capable of work within the above residual functional capacity. The claimant's allegations of totally disabling limitations for this time period are not consistent with the overall record outlined herein. The record supports the conclusion that the claimant has improved with conservative treatment. Furthermore, the examinations in the conservative treating record following July 2019, including those from specialists, support the conclusion claimant has improved and can perform a modified range of sedentary work activity.

[TR 48-50]. The ALJ, thus, compared the evidence during the disability period with evidence after July 8, 2019, and concluded the medical record reflected an improvement in Plaintiff's condition.

To make a finding that substantial evidence does not exist, a reviewing court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen,* 864 F.2d 340, 343–344 (5th Cir. 1988); citing *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). The Court cannot reach such conclusion here. Again, the ALJ has pointed to evidence that the symptoms, signs, or laboratory findings associated with the Plaintiff's severe impairment in her right arm and hand had improved. *Yoakum v. Berryhill*, No. 20-00824, 2022 WL 4543678, at *4 (M.D. La. Sept. 28, 2022) (quoting 20 C.F.R. § 416.994(b)(1)(i)) ("a decrease in severity

'must be based on changes (improvement) in the symptoms, signs, or laboratory findings' related to the claimant's impairment."); *see also Vicknair v. Astrue,* No. 1:08-cv-052-C, 2009 WL 2949764, at *6, *7 (N.D. Tex. Sept. 15, 2009) (requiring the ALJ to rely on evidence of record to *specifically* demonstrate a change or improvement in symptoms, signs, or laboratory findings). "[W]hen courts find an ALJ's medical improvement decision is not supported by substantial evidence, it is generally because, unlike the present case, no medical evidence whatsoever supports the ALJ's finding." *Kropelnicki v. Kijakazi*, H-20-3377, 2022 WL 4390646, at *6 (S.D. Tex. Sept. 5, 2022) (recognizing that a "single medical visit" demonstrating "a change in the medical condition" constitutes substantial evidence of medical improvement), *report and recommendation ad*opted, H-20-3377, 2022 WL 4389525 (S.D. Tex. Sept. 22, 2022); *Zayas v. Comm'r, SSA*, 4:16-CV-00230-CAN, 2017 WL 4270043, at *6 (E.D. Tex. Sept. 26, 2017) (citing *Garcia v. Colvin*, 3:14-CV-4204-L (BH), 2016 WL 1273461, at *15 (N.D. Tex. Mar. 31, 2016)) ("given the lack of any testimony or opinions from physicians or experts or any objective medical evidence after 2009 showing that Plaintiff's epilepsy became decreased in severity such that he medically improved, the ALJ's decision is not supported by substantial evidence of medical improvement."); *Garza,* 2013 WL 796727, at *6 ("while the records do mention [p]laintiff's few statements indicating she was improving. . . nothing else in the record supports a conclusion of medical improvement"). Given the low threshold the ALJ must meet in finding medical improvement and the detailed explanation in the instant ALJ's decision, the Court finds the ALJ's decision is supported by substantial evidence.

       Plaintiff seemingly contends that the medical imaging exam from July 8, 2019, is the only piece of evidence that supports the ALJ's conclusion and demonstrates any improvement and the remaining reports in the record show a contrary result; however, a review of the record reflects

that is not the case.[4]  As the Commissioner details, while the ALJ did rely on a July 8, 2019 medical imaging of the right wrist and elbow that showed no abnormalities [TR 48, 2006, 2008], the ALJ additionally references a number of exams in 2019 and 2020 demonstrating medical improvement. In August and November of 2019, Plaintiff had normal motion in all extremities and had normal bilateral upper extremity power, sensation, and reflexes [TR 1961, 1968].  And at exams in December 2019 and March 2020, Plaintiff had normal strength of the wrists and hands and no sensory deficits [TR 2018-19, 2022-24].  At a March 2020 exam, Plaintiff's neurologist noted that there was no obvious right-hand muscle wasting to suggest ulnar neuropathy and that EMG testing did not suggest any cubital tunnel syndrome [TR 2020].  At another exam later that month, Plaintiff had tenderness and restricted motion (to an unspecified degree) of the right upper extremity and cervical spine but maintained normal motor strength and muscle tone and no edema [TR 1975]. However, only a few weeks later in April 2020, Plaintiff had full musculoskeletal range of motion [TR 1943-44].  In July 2020, Plaintiff had normal strength, including in her hands, and normal muscle tone, sensation, and coordination [TR 2014- 15].  Her provider noted that Plaintiff did not develop any myelopathic features [TR 2013].  When seen in December 2020, Plaintiff's spine was non-tender, she was in no acute distress, and she had normal strength and muscle tone with no focal deficits and no edema [TR 2067].

Considering these improved physical exam findings, the ALJ properly found that Plaintiff's RFC had increased to the extent that she could now perform frequent rather than

---

[4] In further disputing the ALJ's findings as to medical improvement, Plaintiff relies on July 2019 and April 2020 studies noting cervical radiculopathies and spinal stenosis, and four conclusory statements from Paratapji Thakor, M.D., stating that Plaintiff was disabled for next six months increments during the relevant period [Dkt. 25 at 7]. However, the ALJ did not find that any medical improvement had occurred with regard to Plaintiff's cervical functioning [TR 48-49]. Instead, his medical improvement finding was based on increased functioning in Plaintiff's right arm and hand, particularly in the elbow and wrist [TR 48-49, 1995, 2006, 2008].  And the ALJ accommodated this alleged impairment by restricting Plaintiff to sedentary work with postural, environmental, and manipulative limitations.

occasional handling, fingering, feeling, and pushing and pulling of hand controls with her dominant right arm and hand, which represents an increase in her RFC [TR 49]. *Hampton v. Comm'r*, No. 1:22-cv-21, 2022 WL 3716041, at *4 (N.D. Miss. Aug. 29, 2022) ("Put simply, the ALJ identified sufficient evidence that established that medical improvement had occurred and Plaintiff's RFC had increased."). Accordingly, the ALJ's finding that Plaintiff experienced medical improvement is supported by substantial evidence.

### *Remand is not Appropriate Under Sentence Six*

Plaintiff has attached additional evidence with her briefing for consideration. This evidence is outside of the Court's review. *Carter v. Sullivan*, 944 F.2d 243 (5th Cir. 1991) ("We are constrained by the record which was available to the ALJ"). However, construing Plaintiff's briefing more broadly, the Court will consider Plaintiff's attempt to insert out-of-record evidence as a constructive request to remand for further consideration of the additional evidence. Under sentence six of 42 U.S.C. § 405(g), the court "may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g); *see Taylor ex rel. I.C.T. v. Comm'r,* No. 3:11–CV–1015–K (BF), 2012 WL 2794972, at *6 (N.D. Tex. June 8, 2012). To be material, "there must be a reasonable possibility that the new evidence would have changed the outcome of the determination." *Taylor,* 2012 WL 2794972, at *6 (citing *Bradley v. Bowen,* 809 F.2d 1054, 1058 (5th Cir. 1987)) (additional citations omitted); *see also Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir. 1994) (quoting *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir. 1981)). Plaintiff bears the burden regarding the elements of a Sentence Six remand. *See Chaney*, 659 F.2d at 679 (stating

that the claimant has the burden of showing that he had good cause for his failure to submit the evidence in a prior proceeding).

None of the evidence submitted by Plaintiff meets the standard for such a remand. The evidence is not new or it lacks relation to the relevant time period and is, therefore, immaterial to the ALJ's decision. The following pieces of evidence cannot be found to be new because the evidence was in existence at the time of the administrative proceedings and therefore does not warrant remand:[5]

- a March 2017 EMG/NCV testing report [Dkt 25-1 at 3];
- a February 2018 form from William Moore, M.D., stating that Plaintiff is not able to work at the time [Dkt. 25-1 at 5];
- a December 2018 MRI of the right wrist [Dkt. 25-1 at 2];
- an April 2019 opinion from counselor Tina Van Cleve that Plaintiff was disabled [Dkt. 25-1 at 4];
- a July 8, 2019, record showing negative right wrist imaging [Dkt. 25-1 at 7-8];
- a July 22, 2019, MRI of the cervical spine [Dkt. 25-1 at 9-10];
- an April 27, 2020, radiology report regarding cervical spine degenerative changes [Dkt. 25-1 at 11-12];
- a January 29, 2020, electrodiagnostic study of the cervical spine [Dkt. 25-1 at 14];
- an April 2020 medication list [Dkt. 25-1 at 16];
- a prescription list/profile dated August 28, 2020 [Dkt. 25-1 at 17];
- a drug adherence assessment report for the period from September 25, 2018, through July 2, 2019 [Dkt. 25-1 at 6]; and
- October 2019, April 2020, and September 2020 statements from Pratapji Thakor, M.D., opining that Plaintiff was disabled for the next 6 months [Dkt. 25-1 at 13, 15, 18].

The following evidence, although new, also cannot justify remand because it does not address the time-period at issue, and therefore is immaterial to the administrative proceedings:

- A letter from Denton Housing Authority, dated March 30, 2021, identifying Plaintiff as a "Disabled Household Member" [Dkt. 25-1 at 1];
- a March 30, 2021, statement from Pratapji Thakor, M.D., stating that Plaintiff was disabled for the next 6 months [Dkt. 25-1 at 19];

---

[5] Moreover, Plaintiff does not provide any argument—other than it is within the relevant time period—for "good cause" as to why this evidence should now be considered. *Bradley*, 809 F.2d at 1058 (no good cause where plaintiff "does not attempt any showing of good cause, other than the fact that [the new evidence] is of recent origin."); *D.T. v. Barnhart*, No. Civ.A.02-1656, 2003 WL 22038363, at *2 (E.D. La. Aug. 25, 2003) ("The mere fact that a medical report is of recent origin is insufficient to meet the good cause requirement.").

REPORT AND RECOMMENDATION—Page 14

- an August 2021 prescription record from Walgreens [Dkt. 25-1 at 20-25];
- March 2021 x-rays of her right shoulder showing only mild acromioclavicular osteoarthritis [Dkt. 25-1 at 26-28];
- a March 2021 physical therapy referral for four weeks for the right shoulder osteoarthritis [Dkt. 25-1 at 29];
- a March 2021, physical therapy records showing good posture, with limited range of motion of right upper extremity but grip strength of 45 pounds on the right and 55 pounds on the left [Dkt. 25-1 at 30-36; and
- a December 28, 2021, prescription record from Walgreens [Dkt. 25-1 at 37-38].

Since the evidence Plaintiff submitted is neither new nor material, remand under Sentence Six is not appropriate here.

## CONCLUSION AND RECOMMENDATION

For the reasons provided, it is recommended that the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 19th day of December, 2022.**

REPORT AND RECOMMENDATION—Page 15

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE